O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOINT EQUITY COMMITTEE OF INVESTORS OF REAL ESTATE PARTNERS INC., **et al.**, <br><br> **Plaintiffs,** <br><br> v. <br><br> **COLDWELL BANKER REAL ESTATE CORPORATION, et al.,** <br><br> **Defendants.** | CASE NO. SACV 10-0401 AG (MLGx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

    Plaintiffs Bradley B. Larsen, et al. ("Plaintiffs") seek to represent a class of those who were financially injured by purchasing securities from Real Estate Partners ("REP") based on false and misleading information. The now-bankrupt REP sold and marketed these securities. But REP isn't the defendant here. Instead, Plaintiffs have sued Coldwell Banker Real Estate Corporation and Coldwell Banker Real Estate LLC (together, "Defendant" or "Coldwell Banker"). Among other things, Coldwell Banker is a franchisor, and one of its franchisees was Coldwell Banker Commercial Real Estate Partners ("CB/REP"). CB/REP was owned in part by REP. Plaintiffs now allege that CB/REP and REP were effectively the same entity, which the

Court will address in this Order, and Plaintiffs contend that CB/REP and REP were both the ostensible agents of Coldwell Banker.

Coldwell Banker now files a Motion to Dismiss ("Motion") the Second Amended Class Action Complaint ("SAC"). After reviewing all papers and arguments submitted, the Court GRANTS in part and DENIES in part the Motion.

**BACKGROUND**

The following facts come primarily from the SAC, and for purposes of this Motion the Court assumes them to be true. The Court also sets forth some facts in the Analysis section.

Previously, in granting Coldwell Banker's motion to dismiss the First Amended Complaint ("FAC"), the Court stated:

> At this point the Court cannot determine the question of ostensible agency because it is unclear what is being alleged and argued. Plaintiffs should clarify: (1) what actions were taken by REP; (2) what actions were taken by CB/REP; (3) whether REP is the ostensible agent of Coldwell Banker; and (4) whether only CB/REP is the ostensible agent of Coldwell Banker.

(Dkt. # 28.)

CB/REP is a franchise of Coldwell Banker and is 40.5% owned by REP. (*Id.* ¶ 18.) The SAC does not specify who owned or owns the other approximately 60% of CB/REP.

Plaintiff describes the alleged fraudulent scheme: "by making thousands of cold calls from its Orange County boiler rooms, REP managed to entice members of the public to invest approximately $55 million into its fraudulent, unregistered real estate-related security investments." (SAC ¶ 1.) Plaintiff further alleges that REP perpetrated this fraud by obtaining CB/REP, a Coldwell Banker franchise, which REP then used as an alter ego to market and sell its investments. (*Id.*) REP allegedly began "identifying itself to potential investors as Coldwell Banker" and falsely representing that the investments sold by CB/REP were associated with and backed by Coldwell Banker. (*Id.*)

Plaintiffs allege in the SAC that "CB/REP was a mere shell or cover for REP and had no function other than to act as an instrumentality or conduit for a single venture, the REP

Fraudulent Scheme." (SAC ¶ 20.) For this reason, as Plaintiffs allege, "the terms REP and CB/REP shall be used interchangeably throughout the complaint going forward, but shall have the same meaning, unless stated otherwise." (*Id*.) For allegations set forth in paragraphs 1 through 19 of the SAC, the entity names are intentionally distinct, but for allegations after paragraph 20, the names are intentionally indistinct.

The Fraudulent Scheme eventually resulted in regulatory investigations, first by the Texas State Securities Board, and ultimately by the United States Securities and Exchange Commission (the "SEC"). The SEC sued REP, the Investment Funds, and the REP principals in 2007 for violations of federal securities laws, in the United States District Court, Central District of California, Case No. SACV 07-1022 AG (RNBx) (the "SEC Action"). Among the relief sought in the SEC Action was a disgorgement to the defrauded investors – that is, the Class Members – of all ill-gotten gains from the Fraudulent Scheme. (*Id*. ¶ 22.) There have also been several other lawsuits filed regarding the Fraudulent Scheme, seemingly none of which name Coldwell Banker as a defendant. *See, e.g., Joint Equity Committee v. Dawson Davenport, et al.*, SACV 08-8551 AG (MLGx); *Williams v. Davenport*, SACV 02-0997 DOC (MLGx).

REP declared bankruptcy in October 2007. (*Id*. ¶ 23.) And despite the Final Judgment in the SEC Action ordering disgorgement, it became clear in the beginning of 2010 that the assets of REP, the Investment Funds, and the REP principals would be insufficient to make the putative class members whole. As a result, and with the alleged recently discovered complicity of Coldwell Banker in the fraudulent scheme, the Joint Equity Committee of Investors of REP ("Committee") first filed this suit on behalf of the Class Members against Coldwell Banker on April 2, 2010. (*Id*. ¶ 29.) Plaintiffs then voluntarily amended their complaint to substitute the current named plaintiffs in place of the Committee, likely due to standing issues raised by Coldwell Banker. In their reply to the motion to dismiss the FAC, Plaintiffs acknowledged that they filed the complaint because of concerns that REP would be unable to satisfy the judgment already obtained on their behalf and they sought a defendant who could pay. (Reply to Motion to Dismiss the First Amended Complaint at 25:5-7.)

Coldwell Banker had a basically peripheral role in the alleged fraudulent scheme, but Plaintiffs allege some facts trying to connect Coldwell Banker to it. Coldwell Banker was paid by CB/REP in multiple ways, including but not limited to Coldwell Banker's receipt of franchise fees, advertising fees, and commissions, which Plaintiffs allege were paid from proceeds of the Class Members' investments. (*Id.* ¶ 21.) Plaintiffs allege that Coldwell Banker knew about the fraudulent scheme. (E.g., *id.* ¶ 2, 19, 20.) Further, Plaintiffs now allege that, based on correspondence between certain individuals regarding the Investment Funds and as evidenced by documents, Coldwell Banker "not only knew about CB/REP's Investment Funds, but agreed and conspired with REP to use the Coldwell Banker name to solicit the investments." (SAC ¶ 58.) As will be discussed later, Plaintiffs also allege that "both CB/REP and REP are the ostensible agents of Coldwell Banker, and Coldwell Banker is jointly and severally liable for the misconduct of CB/REP and its alter ego and parent REP." (Id. ¶ 31.)

Plaintiffs allege six claims against Coldwell Banker, numbered as follows: (1) negligence; (2) fraud; (3) negligent misrepresentation; (4) violation of California Business and Professions Code § 17200 et seq. ("UCL"); (5) false advertising in violation of California Business and Professions Code § 17500 ("False Advertising Law"); and (6) aiding and abetting.

**PRELIMINARY MATTERS**

Both sides submitted requests for judicial notice, and both sides squabble over the other's requests. Plaintiffs ask the Court to take judicial notice of eight documents, while Defendant has submitted ten documents for judicial notice.

Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001)

4

(emphasis in original). Facts subject to judicial notice may be considered on a motion to dismiss. *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

Consideration of eighteen documents threatens to turn a motion to dismiss into a motion for summary judgment. At the pleading stage, the Court primarily tests the sufficiency of the complaint, but this focus on the four corners of the complaint gets lost in voluminous judicially-noticed documents. Here, Plaintiffs' requested documents are approximately half an inch high in total, and Defendant's documents are approximately two inches high.

On a motion to dismiss, the Court looks mostly at what facts a plaintiff alleges, while at summary judgment, the Court looks at what the evidence ultimately shows about those allegations. Summary judgment brings with it a host of protections and procedures, including those set forth in Federal Rule of Civil Procedure 56 and Local Rule 56. But those procedural safeguards aren't required on a motion to dismiss. Here, the Court is asked to consider heaps of extrinsic documents presented without the protections of a summary judgment, which raises concerns about fairness and due process. Before discovery, each side has access to their own documents and can submit those for judicial notice, but the parties have not yet enjoyed the benefits of viewing the others' records. Documents submitted for judicial notice on a motion to dismiss could be carefully culled to omit damaging documents, without the Court or the opposing party aware of what other documents might be available.

In addition, as noted, the parties have both filed objections to the requests for judicial notice. This suggests that the documents presented might not be straightforward, undisputed facts proper for consideration on a motion to dismiss. Vigorous disputes over documents shouldn't be hashed out here through collateral litigation on a motion to dismiss. One of the issues raised is whether the Court is asked to take judicial notice of the fact that certain documents exist, or whether the Court is being asked to take notice of the facts asserted in those documents. As is often the case with judicial notice requests, it's just not clear.

Finally, while the Court previously took judicial notice of many of the documents now presented, and the Court cited two of those documents in the order dismissing the FAC, the

1 Court's prior decision was not based on those documents. Rather, the decision about the FAC
2 was based on the allegations in the complaint, just as the Court seeks primarily to do here.
3 　　　The Court DENIES the requests for judicial notice, with the expectation that the
4 documents in question are likely to be presented at summary judgment.
5
6 **LEGAL STANDARD**
7
8 　　　A court should dismiss a complaint when its allegations fail to state a claim upon which
9 relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint need only include "a short and plain
10 statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
11 "'[D]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940
12 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (stating that "a complaint
13 attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations")). The
14 Court must accept as true all factual allegations in the complaint and must draw all reasonable
15 inferences from those allegations, construing the complaint in the light most favorable to the
16 plaintiff. *Pollard v. Geo Group, Inc.*, 607 F.3d 583, 585 n.3 (9th Cir. 2010).
17 　　　But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim
18 to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at
19 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw
20 the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.
21 Ct at 1940 (citing *Twombly*, 550 U.S. at 556). A court should not accept "threadbare recitals of a
22 cause of action's elements, supported by mere conclusory statements," *id.*, or "allegations that
23 are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v.*
24 *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Ninth Circuit recently addressed
25 post-*Iqbal* pleading standards in *Starr v. Baca*, — F.3d —, 2011 WL 2988827, at *14 (9th Cir.
26 July 25, 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth,
27 allegations in a complaint or counterclaim may not simply recite the elements of a cause of
28 action, but must contain sufficient allegations of underlying facts to give fair notice and to

6

enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." "A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency . . . or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d at 998, 1003 (9th Cir. 2010); see also *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

## **ANALYSIS**

As stated, Plaintiffs seek to allege six claims against Coldwell Banker in the SAC and Coldwell Banker moves to dismiss all six claims.

The Court very briefly reviews the key issues with each of the claims. The claim for negligence (Claim One) is based on Coldwell Banker's direct actions. In their Opposition, Plaintiffs argue that their claims for fraud (Claim Two) and for negligent misrepresentation (Claim Three) are the only two claims based on ostensible agency between Coldwell Banker and both CB/REP and REP. The only argument raised by Plaintiffs to defend their UCL claim (Claim Four) is whether this claim is barred by the doctrine that the UCL doesn't apply to securities claims. The claims for violation of the False Advertising Law and for aiding and abetting are based on the argument that Coldwell Banker's actions constitute substantial assistance.

The Court will consider each claim, and the accompanying arguments, in turn. But first, the Court addresses Coldwell Banker's argument that the complaint is barred under the doctrine of in pari delicto.

1. **IN PARI DELICTO**

The Court has not previously addressed the issue of in pari delicto because Plaintiffs amended their initial complaint without a court order and the Court dismissed the FAC on other grounds. But it is now necessary to tackle this issue.

The in pari delicto doctrine bars claims when the plaintiff equally participated in the wrongdoing with the defendant. Coldwell Banker argues that in pari delicto bars Plaintiffs from bringing any claims because of an agreement in REP's bankruptcy case that this action is property of REP. (Motion at 9:5-8.) And REP, of course, is alleged to be the primary wrongdoer. Coldwell Banker argues that "[b]y choosing to tie themselves to the [REP] Estate, Plaintiffs tie themselves to defenses against the Estate." (Id. at 10:18-20.)

Plaintiffs point out, among other arguments, that REP has been liquidated and therefore can't "reap any benefit" from this litigation. (Opposition at 17:10.) Plaintiffs argue that the provisions in the bankruptcy court agreements are designed to protect against double recovery, because any recovery from Coldwell Banker would reduce any other recovery to these Plaintiffs from the REP estate. Plaintiffs argue that those agreements are not intended to benefit REP and thus REP doesn't have a real stake in the outcome of this action. Because REP doesn't have a stake, Plaintiffs argue, it's not right to employ affirmative defenses here that are available against REP but not against these Plaintiffs independently.

But the threshold problem with Coldwell Banker's argument is that it requires the Court to make determinations based on documents far outside the complaint. Applying the in pari delicto doctrine here would require much more than taking notice of a simple fact, such as the fact that there were five Sundays in May 2011, or even the fact that other legal actions were filed with the same parties. Ruling on this argument here would require the Court to interpret the effect of agreements from another legal action, in another court, without the benefit of understanding the history of that proceeding, and with only a minimal set of documents. While courts may consider judicially noticed documents in ruling on a motion to dismiss, this Court has

discussed its concerns about turning a motion to dismiss into a motion for summary judgment. Here, the application of in pari delicto is better suited to determination based on a full record.

In cases cited by Coldwell Banker supporting its argument, the courts dismissed under in pari delicto when the defense was shown by the complaint itself. For example, the Second Circuit affirmed a dismissal under the doctrine of in pari delicto where the district court found that "the in pari delicto affirmative defense was established . . . by the facts pled in the Second Amended Complaint." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, LLP, 322 F.3d 147, 163 (2d Cir. 2003). Here, the facts in the SAC don't give rise to even an inference that a class of defrauded investors might be subject to in pari delicto. The doctrine of in pari delicto could apply directly to the Plaintiffs here if they were complicit in the fraud somehow, but that's not even suggested in the SAC. Unlike in *Official Committee*, the applicability of in pari delicto is not demonstrated by the complaint itself.

Coldwell Banker's argument likely depends on a set of facts that are not yet fully before the Court. The Court does not rule here on the ultimate merits of Coldwell Banker's in pari delicto affirmative defense, but the Court finds that in pari delicto does not bar Plaintiffs' claims at the pleading stage.

Thus, the Court now considers each of Plaintiffs' claims.

**2.      CLAIM ONE, FOR NEGLIGENCE**

The Court previously dismissed Plaintiffs' claim for negligence in the FAC for failure to adequately plead duty or causation. The Court again focuses on those two elements, as do the parties.

Plaintiffs must first show that Coldwell Banker owed some sort of duty to the general public. It is settled that "[u]nder general negligence principles . . . a person ordinarily is obligated to exercise due care in his or her own actions so as . . . not to create an unreasonable risk of injury to others." *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 716 (2001). But generally "one owes no duty to control the conduct of another, or to warn those endangered by

1 such conduct" absent a "special relationship." *Zelig v. County of Los Angeles*, 27 Cal.4th 1112,
2 1129 (2002). A duty may rise when "(a) a special relation exists between the actor and the third
3 person which imposes a duty upon the actor to control the third person's conduct, or (b) a special
4 relation exists between the actor and the other which gives the other a right to protection." *Id*. A
5 typical franchisee-franchisor relationship does not constitute a "special relationship." *Wickham*
6 *v. Southland Corp*., 168 Cal.App.3d 49, 61-62 (1985).

       Plaintiffs have not alleged a "special relationship" between Coldwell Banker and the approximately 1600 putative class members that could give rise to a duty. But Plaintiffs have sufficiently alleged a special relationship between Coldwell Banker and CB/REP and REP. This is based on Coldwell Banker allowing – whether through active approval or failure to stop them after becoming aware – CB/REP and REP to use the Coldwell Banker name in association with the fraudulent investments. After Coldwell Banker knew its name was being used, it had a duty to ensure its name wasn't being used to defraud. Plaintiffs have sufficiently alleged a duty.

       The other element of negligence the parties dispute is causation. Plaintiffs allege causation this way:

> As a direct and proximate result of Coldwell Banker's failure to adequately and properly investigate, monitor and control CB/REP and to ensure that it was properly licensed to solicit and sell securities and to ensure that the Investment Funds were properly register[ed] as securities, Coldwell Banker caused and allowed Plaintiffs and the other Class Members to be defrauded by CB/REP and REP and authorized and profited from its franchisee and agent CB/REP's illegal sale of the Investment Funds using the Coldwell Banker name as a cloak of legitimacy. (SAC ¶ 160.)

       In Opposition to the Motion, Plaintiffs argue that if Coldwell Banker had undertaken sufficient due diligence, it would have discovered that CB/REP lacked the necessary licenses, and "[t]his failure resulted directly in the harm to the Plaintiffs." (Opposition at 14:5-6.) Plaintiffs allege that the Coldwell Banker name lent a "cloak of legitimacy" to the fraudulent scheme, and the Court finds that it is plausible this cloak caused some investors to participate in the scheme, which thus caused them harm. As noted, the parties don't discuss the other elements of a negligence claim, and the Court finds that those elements are sufficiently alleged as well.

While Plaintiffs' theory of negligence (Coldwell Banker negligently allowed use of its name) is inconsistent with its basis for ostensible agency (Coldwell Banker affirmatively approved use of its name) such inconsistencies are permissible at the pleading stage. The Court finds that Plaintiffs have plausibly stated a claim for negligence. Thus, the Court DENIES the Motion to dismiss Claim One.

### 3.  CLAIM TWO, FOR FRAUD, AND CLAIM THREE, FOR NEGLIGENT MISREPRESENTATION

Plaintiff's second and third claims rely on a theory of ostensible agency, which itself relies on a theory of alter ego. Plaintiffs allege that REP and CB/REP are alter egos, and that both are the ostensible agents of Coldwell Banker.

The Court will consider the alter ego issue first. Coldwell Banker argues that the SAC either attempts "reverse piercing" of the corporate veil to impute liability on a corporation for acts of the shareholder, or it attempts to impute CB/REP's conduct to REP (but, Coldwell Banker contends, CB/REP wasn't the wrongdoer). Coldwell Banker argues that either of these approaches to alter ego fails. Plaintiffs argue that their "point is simply that REP and CB/REP were legally indistinguishable, and thus alter egos." (Opposition at 5:1-2.) But as Coldwell Banker points out – burying a valid point in a footnote – REP only owns 40.5% of CB/REP, and Coldwell Banker argues that it is "difficult to conceive how there could be 'unity of interest' between REP and CB/REP when CB/REP had shareholders other than REP." (Motion at 13, fn. 7.)

While Plaintiffs might face a steep uphill battle to prove that REP and CB/REP were effectively the same entity, particularly when other lawsuits have proceeded to settlement or judgment against only one of them, the Court finds that Plaintiffs have sufficiently *alleged* that REP and CB/REP are indistinguishable. In the SAC, Plaintiffs set forth a list of ways in which REP and CB/REP ignored their separate corporate forms. (*See* Opposition at 5:3-25.) For example, some CB/REP employees were paid directly by REP. (SAC ¶ 59(c).) CB/REP and

1  REP used their names interchangeably. (*Id.* ¶ 59(b).) They shared the same office locations, and
2  REP employees used cbcrep.com email addresses. (*Id.*) And Plaintiffs allege that Coldwell
3  Banker knew that REP was using the name CB/REP since 2000, after REP filed for that
4  fictitious business name. (*Id.* ¶ 43-44.)
5  So, the next issue is whether Plaintiffs can tie the CB/REP-REP bundle to Coldwell
6  Banker through a theory of ostensible agency. "An agency is ostensible when the principal
7  intentionally, or by want of ordinary care, causes a third person to believe another to be his agent
8  who is not really employed by him." Cal. Civ.Code § 2300. California statutes pertaining to
9  ostensible agency require proof of three elements in order to establish that a principal is liable
10 for the acts of an ostensible agent: (1) the person dealing with the agent must do so with belief in
11 the agent's authority and this belief must be a reasonable one, (2) such belief must be generated
12 by some act or neglect of the principal, and (3) the third person in relying on the agent's
13 apparent authority must not be guilty of negligence. *Certain Underwriters at Lloyd's of London*
14 *v. American Safety Ins. Services, Inc.*, 702 F. Supp. 2d 1169 (C.D. Cal. 2010).
15 Here, Coldwell Banker is alleged to be the principal, and both CB/REP and REP are
16 alleged to be the ostensible agents. The parties disagree over whether Plaintiffs have sufficiently
17 alleged an act or neglect by Coldwell Banker that could cause a third party to believe an agency
18 relationship existed. But Plaintiffs have identified at least one clearly affirmative act by
19 Coldwell Banker: that Coldwell Banker's Vice President Jerry Anderson authorized REP's use
20 of the Coldwell Banker name to market the investment funds and approved particular sales
21 brochures for the funds with the Coldwell Banker name. (SAC ¶¶ 49, 50.) Plaintiffs also allege
22 some specific neglect by Coldwell Banker: that even after it knew the Coldwell Banker name
23 was being misused by CB/REP, it failed to terminate the franchise or stop CB/REP from further
24 use. (*Id.* ¶ 129.) Even though Plaintiffs don't fully reconcile these allegations with other
25 allegations showing that Coldwell Banker tried to repudiate CB/REP's conduct and to stop
26 CB/REP from using the Coldwell Banker name, Plaintiff's allegations are sufficient at this stage
27 to show ostensible agency. And while additional facts outside the SAC might eventually show a
28

lack of ostensible agency, at this stage the Court determines that Plaintiffs' allegations are at least plausible. *Iqbal*, 129 S. Ct. at 1949.

The parties don't discuss the elements of the fraud and negligent misrepresentation claims themselves. The Court finds that Plaintiff's Claim Two, for fraud, meets the specificity requirements of Rule 9(b), and Plaintiffs have sufficiently alleged facts regarding each element of a claim for fraud. For Claim Three, negligent misrepresentation, Plaintiffs have also sufficiently stated a claim.

Thus, the Court finds that Plaintiffs have adequately lashed CB/REP and REP together with an alter ego theory. And Plaintiffs have sufficiently hooked Coldwell Banker to CB/REP and REP through a theory of ostensible agency. The ultimate strength of these bonds remains to be seen, but the allegations are plausible enough. The Court therefore DENIES the Motion to dismiss Claim Two and Claim Three.

**4.      CLAIM FOUR, FOR VIOLATION OF THE UNFAIR COMPETITION LAW**

The Court previously dismissed this claim on the basis that the UCL does not apply to claims based on securities transactions. The Court relied on *Bowen v. Ziasun Techs., Inc*., 116 Cal. App. 4th 777, 788 (2004) ("section 17200 does not apply to securities transactions"), and its progeny.

Plaintiffs' arguments haven't convinced the Court to change the law of the case or to revisit its decision that the *Bowen* holding bars this claim as framed in the FAC and, again, in the SAC. Further, Plaintiffs here are suing to try to get the same money they're worried they can't recover from REP, money for claims based on securities transactions. Plaintiffs are people who purchased fraudulent securities from REP in a securities transaction. While the claims here are not for securities fraud, the claims are still closely tied to securities transactions. Thus, for the reasons set forth in the order dismissing the FAC – including, notably, the fact that the SEC prosecuted REP for securities violations in the fraudulent scheme – the Court GRANTS the Motion to dismiss Claim Four.

**5.     CLAIM FIVE, FOR VIOLATION OF THE FALSE ADVERTISING LAW**

Plaintiffs argue that this claim, for violation of the False Advertising Law, is based on a theory of aiding and abetting rather than agency. "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal.App.4th 860, 879 (2007). But Plaintiffs argue that Coldwell Banker took affirmative steps to aid and abet violation of the False Advertising Law. In particular, Plaintiffs argue that Coldwell Banker "reviewed and approved the brochures and marketing materials for the Investment Funds, including the use of its name and logo therein, and negotiated and received royalty fees and monies in connection with the Fraudulent Scheme." (Opposition at 2:4-7.) Plaintiffs have alleged more than mere knowledge and passive failure to stop. These allegations are sufficient to establish "substantial assistance or encouragement" at the pleading stage. *River Colony Estates*, 287 F.Supp.2d at 1225.

Coldwell Banker argues that this False Advertising Law claim is barred for the same reason as the UCL claim, namely that a plaintiff can't bring such a claim when it's connected to a securities transaction. To support that argument, Coldwell Banker cites a single unpublished case from the Northern District of California, *Kainos Laboratories, Inc. v. Beacon Diagnostics, Inc.*, No. C-97-4618 MHP, 1998 WL 2016634 (N.D. Cal. Sept. 14, 1998). To the extent *Kainos* sets forth its reasoning, the Court declines to follow it.

The Court DENIES the Motion to Dismiss Claim Five.

**6.     CLAIM SIX, FOR AIDING AND ABETTING**

Plaintiffs argue that the same allegations support their claim for aiding and abetting as for violation of the False Advertising Law. The Court granted Coldwell Banker's motion to dismiss this claim in the FAC because Plaintiffs' allegations were insufficient and conclusory. The Court finds that Plaintiffs have now sufficiently alleged the requisite "substantial assistance" to state such a claim.

The Court DENIES the Motion to Dismiss Claim Six, to the extent it is not duplicative of other claims.

**7. CONCLUSION**

Plaintiffs have adequately amended their complaint to include allegations connecting Coldwell Banker to the scheme. The Court also finds that the deficiencies of Claim Four cannot be cured by amendment, and thus dismissal without leave to amend is proper. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

**DISPOSITION**

The Court GRANTS the Motion to dismiss Claim Four without leave to amend. The Court DENIES the Motion to dismiss Claims One, Two, Three, Five, and Six.

IT IS SO ORDERED.

DATED: September 6, 2011

_____
Andrew J. Guilford
United States District Judge