# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA



### CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. | SACV 10-00401-AG (MLGx) |
| | Date: February 2, 2012 |
| Title | Bradley B. Larsen et al., v. Coldwell Banker Real Estate Corp., et al. |

**Present: The Honorable** Marc L. Goldman, Magistrate Judge

| Terri Steele | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** In Chambers: Order Determining Privilege Status of Documents Bates-stamped CB 00021267 to 00021270; Order Denying Plaintiffs' Motion to Compel Production of Documents; Order Denying Plaintiffs' Motion for Sanctions [Doc #104]

Plaintiffs have filed a motion, pursuant to Fed. R. Civ. P. 26(b)(5)(B), to have the Court conduct an *in camera* review of documents Bates-stamped CB 00021267 to 00021270 in order to determine their privileged status. Defendants assert that these documents were inadvertently disclosed in a document production and are protected from disclosure by the attorney-client privilege.

Plaintiffs have also filed a motion compelling the production of Defendants' electronically stored information ("ESI") in native format with intact metadata, alleging that Defendants have failed to comply with the Court's October 25, 2011 Order compelling production of ESI. Plaintiffs also request that the Court order Defendants to answer under oath 12 questions propounded by Plaintiffs concerning their ESI preservation, collection and processing; order a neutral third party vendor to re-collect and process Defendants' ESI; and award sanctions in the amount of $32,528.00 as a result of Defendants' alleged failure to comply with this Court's October 25, 2011 Order. Having reviewed the pleadings, the Court finds that the matter is appropriate for decision without oral argument, and the hearing set for February 7, 2012, is taken off calendar. Fed.R.Civ.P. 78; C.D. Cal. R. 7-15.

The Court will address each motion in turn:

A. <u>Review of Privilege Status of Documents Bates-stamped CB 00021267 to 21270</u>

    1.    Factual Background

The documents at issue, which have been lodged separately under seal, were produced by Defendants on October 26, 2011 in a production range of CB 00020490 to 00021573. (Henry Decl., Ex. 22.) The remaining documents were produced on November 30, 2011. On December 1, 2011, the day after becoming aware of the production, Defendants sent a letter to Plaintiffs' counsel stating that documents CB 00021267 to 21270 had been inadvertently produced and were protected by the attorney-client privilege. (Milstead Decl. ¶¶ 2-9, Exs. 1, 22.) The letter requested that Plaintiffs either return or destroy the document, pursuant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 10-00401-AG (MLGx) | Date | February 2, 2012 |
| Title | Bradley B. Larsen et al., v. Coldwell Banker Real Estate Corp., et al. | | |

to Fed. R. Civ. P. 26(b)(5)(B). (Milstead Decl., Ex. 22.)

The documents consist of a chain of three emails among Coldwell employees and in-house counsel concerning Coldwell's franchisee, Coldwell Banker Commercial Orange Coast. (Milstead Decl., Ex. 1; Document Lodged Under Seal for In Camera Review Pursuant to FRCP Rule 26(b)(5).) The first email, dated September 12, 2003, is from Michael McLean, Director of the Western Region for Coldwell, to Coldwell General Counsel Lisa Biase, Esq., with in-house counsel Pat Cardwell, Esq. and eight other Coldwell employees copied on the email. This initial email states that it was sent at the request of Attorney. Biase and Jackie Chesler, and relates Mr. McLean's knowledge regarding activities of Coldwell Banker Commercial Orange Coast. At the end of the first email, there is a heading entitled "Legal Issues Needing Clarification," written in bold and all capitals with a list of five issues. (Id.)

The second email, also dated September 12, 2003, is from Marc Fishman, Coldwell Vice President of Franchise Administration, who was one of the individuals copied on the first email, and was sent to Michael McLean and Lisa Biase, as well as to two other Coldwell in-house counsel, Walter Dembiec, Esq. and Kathie Lee, Esq. (Id.) The email also copies in-house counsel Pat Cardwell and five other Coldwell employees. (Id.) The email includes a heading in bold and all caps entitled "Subject to Attorney Client Privilege." (Id.)

The third email, dated September 15, 2003, is from Coldwell in-house counsel Walter Dembiec, responding to the two previous emails, and is addressed to Marc Fishman and Michael McLean, as well as to General Counsel Lisa Biase and in-house counsel Kathie Lee. In-house counsel Pat Cardwell, along with five other Coldwell employees are copied on this email. (Id.) The email includes a notice that it is from the "Cendant Corporation Legal Department[1] which may be Confidential and/or Privileged." (Id.)

2. Applicable Law

As a preliminary matter, the Court must decide what law governs the determination of whether the documents at issue are protected by the attorney-client privilege. In a federal action based on diversity jurisdiction, such as this one, state law governs attorney-client privilege claims. Fed. R. Evid. 501 (state law governs privilege regarding a claim or defense for which state law supplies the rule of decision); *In re Public Utilities Com'n*, 892 F.2d 778, 781 (9th Cir. 1989). Here, Plaintiffs contend that New Jersey law governs the privilege question, while Defendants claim that California law govern the issue of privilege. A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *see also S.A. Empresa de Vicao Aerea Rio Grandense*, 641 F.2d 746, 749 (9th Cir.1981) ("In diversity cases, federal courts must apply the conflict-of-law principles of the forum state.") (internal citations omitted).

---

[1] Cendant Corporation was Coldwell's parent company at the time of the correspondence. (Fischman Decl. ¶ 2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 10-00401-AG (MLGx) | Date | February 2, 2012 |
| Title | Bradley B. Larsen et al., v. Coldwell Banker Real Estate Corp., et al. | | |

California employs a "governmental interest analysis" to choice of law questions. "Under this approach, California law will be applied unless the foreign law conflicts with California law and California and the foreign jurisdiction have significant interests in having their law applied." *S.A. Empresa*, 641 F.3d at 749 (citing *Strassberg v. New England Mutual Life Ins. Co.*, 575 F.2d 1262, 1263-64 (9th Cir. 1978); *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 163 (1978)). Where significant interests conflict, the court must assess the "comparative impairment" of each state's policies. *Id.* The law applied will be that of the state whose policies would suffer the most were a different state's law applied. *Id.* A separate choice-of-law inquiry must be made with respect to each issue in a case. *Beech Aircraft Corp. v. Superior Court of Los Angeles*, 61 Cal.App.3d 501, 518 (1976).

Plaintiffs argue that, under California's choice of law provisions, New Jersey law governs the issue of whether these documents are protected by the attorney-client privilege. This is so because New Jersey and California law conflict, and New Jersey has a "significant interest" in having its privilege rules applied. This interest is based upon the fact that Coldwell has its principal place of business in New Jersey; Coldwell's in-house attorneys were licensed in New Jersey; and Coldwell's franchise agreement with non-party Coldwell Banker Commercial REP contains a New Jersey choice of law clause.

Plaintiffs further contend that New Jersey law conflicts with California law because in New Jersey, the attorney-client privilege is qualified and may be "pierced upon a showing of need, relevance and materiality, and the fact that the information could not be secured from any less intrusive source." *Payton v. New Jersey Turnpike Authority*, 148 N.J. 524, 552 (1997). On the other hand, under California law, "[t]he privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case." *Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 732 (2009). This means the court cannot "weigh" or "balance" the privilege against the need for information. "As a general rule, privileged communications are protected regardless of their relevancy to the issues in the litigation, and despite any private or public interest in disclosure." *Rittenhouse v. Superior Court*, 235 Cal.App.3d 1584, 1590 (1991); *see also Doe 2 v. Superior Court*, 132 Cal.App.4th 1504, 1517 (2005) (court cannot compel disclosure even if a protective order is imposed).

Defendants counter that assuming such a conflict exists, California law applies. California has a "significant interest" in having its laws applied because Defendants are all California corporations; Coldwell's in-house attorneys, although licensed in New Jersey, were providing legal advice about a California franchise; no Plaintiff in this case is a party to the franchise agreement containing the New Jersey choice of law clause; each putative class member in this action signed investment documents containing California choice of law provisions; and Plaintiffs have asserted only California state law substantive claims, including common law fraud, negligent misrepresentation, and negligence, as well as a statutory claim under California Business and Professions Code section 17500.

Assuming arguendo that there is at least some conflict between California and New Jersey law with respect to determining the scope of the attorney-client privilege, the Court finds that New Jersey does not have a "significant interest" in having its law applied, whereas California does. As noted above, the Defendants are all California corporations; Plaintiffs' suit alleges only California common law and statutory claims; Plaintiffs were not parties to the franchise agreements with non-party Coldwell Banker Commercial REP; and the putative class members signed investment documents containing California choice of law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-00401-AG (MLGx) | Date | February 2, 2012 |
|---|---|---|---|
| Title | Bradley B. Larsen et al., v. Coldwell Banker Real Estate Corp., et al. | | |

provisions. Having very little connection to this case, it cannot be said that New Jersey has a "significant interest" in having its privilege laws applied here.

Accordingly, the Court will apply California law to determine whether the documents at issue are protected by the attorney-client privilege.

3.   Analysis

Under California law, "evidentiary privileges such as the attorney-client privilege are governed by statute." *HLC Props., Ltd. v. Superior Court*, 35 Cal.4th 54, 59 (2005). The attorney-client privilege confers a privilege on the client "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer ...." Cal. Evid. Code § 954. The attorney-client privilege attaches to a "confidential communication between client and lawyer" during the course of the attorney-client relationship. Cal. Evid. Code § 952. "Confidential communications include information transmitted between attorney and client, and 'a legal opinion formed and the advice given by the lawyer in the course of that relationship.'" *Calvert v. State Bar*, 54 Cal.3d 765, 779 (1991) (quoting Cal. Evid. Code § 952).

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of the attorney-client relationship." *Costco*, 47 Cal.4th at 733. To determine whether a communication is privileged, "the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." *Clark v. Superior Court*, 196 Cal.App.4th 27, 51 (2011). "Under that approach, when the party claiming the privilege shows the dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by privilege." *Id.*

Here, Defendants have shown that the "dominant purpose" of the relationship was one of attorney-client. The document at issue contains a response from a Coldwell employee to a specific request for information from Coldwell's general counsel regarding a legal matter. The document contains a request from a Coldwell employee to Coldwell's general counsel for legal advice in a list of "Legal Issues Needing Clarification." Only Coldwell employees and in-house counsel were sent or copied on the email. Attorney communications with agents and employees of a corporate client are also protected by the attorney client privilege. *Upjohn v. United States*, 449 U.S. 383, 391-393 (1981); *Zurich American Ins. Co. v. Superior Court*, 155 Cal.App.4th 1485, 1499-1500 (2007). Accordingly, Defendants have met their burden of establishing that the documents at issue are a "communication made in the course of the attorney-client relationship." *Costco*, 47 Cal.4th at 733.

"Once th[e] party [claiming the privilege] establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.* (internal citations omitted.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 10-00401-AG (MLGx) | Date | February 2, 2012 |
| Title | Bradley B. Larsen et al., v. Coldwell Banker Real Estate Corp., et al. | | |

Plaintiffs make various arguments as to why the attorney-client privilege does not apply in this case, none of which are meritorious. Plaintiffs first contend that the information contained in the documents at issue is merely factual and therefore the communications are not privileged. Contrary to Plaintiffs' assertion, the privilege equally attaches to both "legal" and "factual" information or advice exchanged between the attorney and client. "Neither the statutes articulating the attorney-client privilege nor the cases which have interpreted it make any differentiation between 'factual' and 'legal' information." *Mitchell v. Superior Court*, 37 Cal.3d 591, 601 (1984); *Costco*, 47 Cal.4th at 734.

Plaintiffs also contend that the privilege does not apply because the "dominant purpose" of the communication at issue here was implementing business strategies, rather than securing legal advice. A communication made both for a purpose in furtherance of the attorney-client professional relationship and for a purpose independent of that relationship falls within the privilege only if its dominant purpose is to further the objective of the attorney-client relationship. *Costco*, 47 Cal.4th at 734-735. Whether a particular communication is "predominately" in furtherance of the attorney-client relationship is a question of fact. *Id.* (internal citations omitted.)

Plaintiffs next contend that the "dominant purpose" of the communications at issue here was business related rather than providing legal advice because non-lawyers answered or responded to the issues addressed in the email. As discussed above, the fact that non-lawyers, here Coldwell employees, responded to the request for advice does not make the communications between Coldwell employees and in-house counsel unprivileged. Communications between corporate counsel and employees of the client are privileged. *Zurich American*, 155 Cal.App.4th at 1499-1500. Plaintiffs also argue that the dominant purpose of the document was business related because the email merely summarized Mr. McLean's visit to affiliate Orange Coast Commercial, which he testified to SEC attorneys was done in the "ordinary course of business." (Henry Decl., Ex 7 (McLean Depo. 22:6-9.)) However, the fact that Mr. McLean's visit to an affiliate was conducted as a routine business matter does not necessarily mean that a discussion of that visit between Coldwell employees and corporate counsel is solely a business matter. Rather, the Court must look to the dominant purpose of the communication. It is evident here that the dominant purpose of the communication was a Coldwell employee's response to a request for information from in-house counsel and a further request by that same Coldwell employee to in-house counsel for legal advice on a variety of issues.

Finally, Plaintiffs contend that the attorney-client privilege does not apply here because the documents at issue are subject to the crime-fraud exception. Plaintiffs argue that Mr. McLean stated in a 2006 deposition conducted by SEC attorneys that he confirmed in his August 2003 affiliate visit to Orange Coast Commercial that they were not selling any investment or securities vehicles (Henry Decl., Ex. 9 (SEC Ex. 179)), but that this statement is directly contradicted by Mr. McLean himself in the document at issue. There is no attorney-client privilege if the attorney's services were sought or obtained to "enable or aid anyone" in the commission of a crime or fraud. Cal. Evid. Code § 956; *State Farm Fire & Cas. Co. v. Superior Court*, 54 Cal.App.4th 625, 643 (1997). However, the "crime-fraud" exception is extremely limited and only applies where the client seeks legal assistance to plan or perpetrate a crime or fraud. *People v. Clark*, 50 Cal.3d 583, 621-623 (1990). Here, Plaintiffs have provided no evidence that Mr. McLean was seeking Coldwell in-house counsel's legal assistance *in order to* plan or perpetrate a crime or fraud at the time the email was written in 2003.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 10-00401-AG (MLGx) | Date | February 2, 2012 |
|---|---|---|---|
| Title | Bradley B. Larsen et al., v. Coldwell Banker Real Estate Corp., et al. | | |

Accordingly, the Court finds that **documents Bates-stamped CB 00021267 to 00021270 are protected by the attorney-client privilege.** Therefore, the Court orders Plaintiffs to return these documents to Defendants immediately.

B.  Adequacy of Defendants' ESI Production Following the Court's October 25, 2011 Order

Plaintiffs contend that Defendants' ESI production has been inadequate, in violation of the Court's October 25, 2011 Order, which provided in relevant part:

> Plaintiffs have filed a motion to compel the production of electronically stored information ("ESI") in so-called "native" format with the metadata intact. Defendants have objected to production of data in native format and have instead proposed to produce documents in TIFF format. For the reasons stated on the record at the hearing, the Court **GRANTS** Plaintiffs' motion to produce documents in native format.
>
> In order to address the concerns raised by Defendants regarding production in native format Defendants shall produce the documents in TIFF format with a link to the native data. Plaintiffs agree to use the TIFF format of the data at depositions and trial in order to preserve the bates labeling and confidentiality stamps. Defendants shall produce the ESI it believes is privileged in TIFF format without a link to the native data, as long as the text remains searchable and the remaining metadata is intact, subject to Plaintiffs' right to take issue with any claims of privilege. Production of these documents shall be completed by November 30, 2011.

(Docket No. 94.)

Plaintiffs contend that the integrity of Defendants' collection and processing of its ESI has been called into question based upon: (1) MD5 file mismatches between the "digital fingerprints" produced by Defendants and the corresponding values of the produced native files; (2) mismatches between the file type extensions of the native files given by Defendants and the file type extensions of the produced native files themselves; (3) missing filesystem metadata, including the dates on which documents had been created and modified by their custodians and filepaths; (4) unverifiable filenames; and (5) mismatches of MD5 file calculations: .xls, .ppt and .html and the selection of appropriate fields to conduct email calculation matches.

Plaintiffs further contend that data is missing from the production, relying upon the following examples:

(1) On February 2, 2005, Coldwell Vice President Lynette Carhart-Gladdis received a letter from Joseph Omans of the Texas State Security Board. On February 4, 2005, Ms. Carhart-Gladdis responded. However, there are no further records in the document production relating to this topic. Plaintiffs contend that this suggests that Defendants have not adequately collected and processed ESI or that they are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 10-00401-AG (MLGx) | Date | February 2, 2012 |
| Title | Bradley B. Larsen et al., v. Coldwell Banker Real Estate Corp., et al. | | |

deliberately withholding relevant documents.

(2) On August 18, 2005, an email was sent to David Rouse, Manager of Coldwell's Commercial Services and Business Development, requesting information about a "partnership" between Coldwell and REP, in response to an inquiry from a residential customer which had been passed on by the customer's broker to Coldwell corporate residential. Plaintiffs contend that the lack of response by Mr. Rouse indicates that either Mr. Rouse did not respond to the inquiry or that Defendants have withheld the response.

(3) Despite having requested information concerning the Oracle database used by Defendants to generate spreadsheets and keep track of records relating to its franchises, Defendants have refused to produce any information from its database other than a .pdf version of information it has in electronic format. Defendants have relied on some of this information in support of its opposition to class certification, including Exhibit 55.

Plaintiffs argue that, pursuant to Fed. R. Civ. P. 37(b)(2)(A), these alleged problems in Defendants' ESI production require that Defendants answer under oath 12 questions propounded by Plaintiffs concerning their ESI preservation, collection and processing; that a neutral third party vendor re-collect and process Defendants' ESI; and that Defendants provide Plaintiffs with the full Oracle database used to create Exhibit 55 to its opposition to the motion for class certification.

Defendants contend that they have complied with the Court's October 25, 2011 Order and that Plaintiffs are manufacturing alleged inadequacies with their production. Defendants further argue that any benefit to Plaintiffs in granting its requested relief is far outweighed by the cost and burden to Defendants.

"The requesting party has the burden on a motion to compel to show that the responding party's steps to preserve and produce relevant electronically stored information were inadequate." The Sedona Conference, The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production, Principle 7 (2d ed. 2007) (the "Sedona Principles").[2] Further, "[w]hen balancing the cost, burden, and need for electronically stored information, courts and parties should apply the proportionality standard embodied in Fed. R. Civ. P. 26(b)(2)(C) ..., which require consideration of the technological feasibility and realistic costs of preserving, retrieving, reviewing, and producing electronically stored information, as well as the nature of the litigation and the amount in controversy ...." Sedona Principles, Principle 2. Pursuant to Fed. R. Civ. P. 26(b)(2)(C)(iii), the court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that

---

[2] Courts are increasingly referring to the Sedona Principles for guidance in matters regarding electronic discovery. See, e.g., In re Facebook PPC Advertising Litigation, 2011 WL 1324516, *2 (N.D.Cal. 2011); Techsavies, LLC v. WDFA Marketing Inc., 2011 WL 723983, *2, fn. 5 (N.D.Cal. 2011); Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 440 (S.D.N.Y. 2004) (citing Sedona Conference as having "provided very useful guidance on the thorny issues relating to the discovery of electronically stored information").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 10-00401-AG (MLGx) | Date | February 2, 2012 |
| Title | Bradley B. Larsen et al., v. Coldwell Banker Real Estate Corp., et al. | | |

the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

Here, Plaintiffs have failed to meet their burden of showing that Defendants' preservation and production of ESI was inadequate. The few isolated examples cited by Plaintiffs (out of a document production of approximately 9,000 pages) fail to demonstrate that Defendants have not reasonably and in good faith produced the documents required by this Court's October 25, 2011 Order. *See, e.g., MGA Entertainment, Inc. v. National Products Ltd.*, 2011 WL 4550287, *2 (C.D.Cal. 2011). Nor have Plaintiffs made any argument that the alleged discrepancies in Defendants' document production have prevented them in any way from obtaining information relevant to a claim or defense under Fed. R. Civ. P. 26(b)(1). *See Bethea v. Comcast*, 218 F.R.D. 328, (D.D.C. 2003) ("When a party seeks to compel discovery, it first has the burden of demonstrating the relevance of the information to the lawsuit."); *Ayala v. Tapia*, 1991 WL 241873, *2 (D.D.C. 1991) (denying motion to compel where party seeking production could not identify any relevant information that was being withheld).

Furthermore, the burden and expense to Defendants in completely reproducing its entire ESI production far outweighs any possible benefit to Plaintiffs. Defendants state that the original production of ESI required over 1000 hours of personnel time spent collecting, reviewing and preparing the documents for production at a cost in the hundreds of thousands of dollars. (Milstead Decl. ¶ 10.) To require Defendants to repeat this labor merely because Plaintiffs have identified a few alleged discrepancies in the ESI production is simply unreasonable. *See* Sedona Principles, Cmt. 6.a. ("A producing party should not be required to undertake more heroic efforts merely because the party seeking discovery is suspicious of the efforts undertaken by the producing party.")

Accordingly, the Court **DENIES** Plaintiffs' request to require that Defendants answer under oath 12 questions propounded by Plaintiffs concerning their ESI preservation, collection and processing; that a neutral third party vendor re-collect and process Defendants' ESI; and that Defendants provide Plaintiffs with the full Oracle database used to create Exhibit 55 to its Opposition.

In addition, the Court **DENIES** Plaintiffs' motion for sanctions in the amount of $32,528.00. As discussed in detail above, Plaintiffs have not shown that Defendants violated this Court's October 25, 2011 Order, and therefore sanctions are not warranted.

                                                                                    :
                                                      Initials of Clerk      ts